UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TERRANCE J. SHAW,

              Plaintiff,

v.

PAUL S. KEMPER, CAPTAIN CHAPMAN, MS. JAGODZINSKI, MICHELLE BONES, JON E. LITSCHER, and DEPUTY WARDEN JOHNSON,

              Defendants.

Case No. 21-CV-303-JPS

**ORDER**

      Plaintiff Terrance J. Shaw, who was an inmate at Racine Correctional Institution ("RCI") at the time that he filed his complaint, filed this pro se action under 42 U.S.C. § 1983 alleging that various defendants at RCI violated his constitutional rights. ECF No. 1.[1] Plaintiff has paid the $402 filing fee, but the Court must still screen the complaint. 28 U.S.C. § 1915A ("The Court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."). Plaintiff has also filed a motion to appoint counsel and a motion for a protective order. ECF. No. 8. For the reasons explained below, the Court will deny Plaintiff's motion to appoint counsel, grant the motion for a protective order to the extent that the protective order seeks to restrict access to Plaintiff's medical records, and give Plaintiff leave to amend his complaint.

---

[1] Although Plaintiff has since been released from custody, courts "look to the status of the plaintiff at the time he brings his suit" to determine whether the Prison Litigation Reform Act ("PLRA") applies. *Witzke v. Femal*, 376 F.3d 744, 750 (7th Cir. 2004).

1.   SCREENING THE COMPLAINT

    1.1   Federal Screening Standard

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints

liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 1.2 Plaintiff's Allegations

Plaintiff, who is wheelchair-bound, has filed several actions against RCI regarding the institution's wheelchair-accessibility shortcomings. When the events underlying this case arose, he had four cases pending in federal court. As alleged in the instant case, Plaintiff required a wheelchair-accessible "wet" cell (i.e., with a toilet/sink) with grab bars around the toilet area. However, RCI did not have this type of cell available in its general population cells. Thus, on May 18, 2018, RCI staff placed Plaintiff in segregation (the "Green West Unit") because there was a wet cell available with appropriate grab bars. Plaintiff's placement in the Green West Unit had nothing to do with disciplinary or punitive reasons.[2]

Captain Chapman ("Chapman") is the manager of both the Green West Unit and the Green East Unit (collectively, the "Green Units"). The Green West Unit houses inmates who require segregation for punitive reasons, as well as inmates, like Plaintiff, who are disabled and require certain accommodations that are unavailable in general population. Green East houses new arrivals for approximately thirty days. Shortly after arriving at the Green West Unit, Plaintiff wrote to Chapman to explain why Plaintiff was in Green West Unit (i.e., for disability accommodation, rather than disciplinary reasons). ECF No. 1 ¶¶ 10–12.

---

[2]It appears that "[Assistant Health Services Unit Manager] Ms. Frazier and [Inmate Complaint Examiner] Ms. M. Bones" directed Plaintiff's transfer to the Green West Unit after he made various complaints about needing a wet cell.

Page 3 of 17
Case 2:21-cv-00303-JPS   Filed 05/16/22   Page 3 of 17   Document 10

On May 22, 2018, a few days after his new placement, Plaintiff went to the prison law library to work on his previously mentioned cases. However, the librarian, Ms. Jagodzinski, told him that he was not allowed to be in the library due to an institution policy forbidding Green Unit inmates from conducting legal work or working with inmate legal assistants. He was further told that his presence at the library put him in jeopardy of "receiving an inmate conduct report for 'Being in an Unassigned Area.'" *Id.* ¶ 13. Plaintiff had no other way of accessing legal resources, and he states that he was forced to choose between his disability needs and his litigation needs. *Id.* ¶ 20.

Plaintiff filed an inmate complaint detailing what occurred. He did not receive a response from Chapman, so he filed a petition for emergency injunctive relief before this Court. The Wisconsin Department of Justice learned of the petition, and, on May 30, 2018, Plaintiff received a message from Deputy Warden Johnson ("Johnson") authorizing him to use the law library. In total, Plaintiff went a week without access to the law library.

But Plaintiff was not content—the fact remained that there was an ostensible policy forbidding Green Unit inmates from using the law library, regardless of why they were housed in the Green Unit. Additionally, on June 1, 2018, Plaintiff received a letter from Inmate Complaint Examiner M. Bones ("Bones"), who returned his original complaint and instructed Plaintiff to raise his grievance with Johnson *before* filing his inmate complaint. Thus, on June 2, 2018, Plaintiff wrote to Johnson to explain what had happened.

On June 5, 2018, Plaintiff received a formal letter from Chapman, which expressly permitted Plaintiff to use the law library at the same time as another unit. The letter noted that once Plaintiff moved from Green Unit,

the arrangement would end. This letter seems to substantiate Plaintiff's concern that other inmates on Green Unit would continue to lack access to legal resources—essentially, he alleges, he has been made a temporary exception to an unconstitutional policy.

On June 26, 2018 Plaintiff re-filed his inmate complaint with Bones, again complaining of the law library policy for Green Unit. On July 5, 2018, Bones rejected his complaint on two grounds: first, the complaint was untimely because the incident had arisen more than fourteen days prior to the complaint's filing; and, second, the matter had been resolved because Plaintiff had received access to the law library. She also concluded that Plaintiff had not adequately alleged injury from the week-long law library denial. Plaintiff suspects that Bones's instructions to first exhaust his complaint with Johnson was a ploy to avoid ruling on his complaint in a timely manner.

On July 7, 2018, Plaintiff appealed Bones's decision, explaining that the timeliness issue was not his own fault, but rather the fault of Chapman and Johnson, who failed to answer his letters until he petitioned for an injunction. On July 9, 2018, Warden Paul S. Kemper ("Kemper") affirmed denial of the complaint, noting that it was untimely.

Plaintiff alleges that Chapman, Jagodzinski, Johnson, and Bones are all aware of the institution policy preventing Green Unit inmates from using the law library to obtain legal assistance, and that there were no other legal resources available. Plaintiff further alleges that Kemper and Wisconsin Department of Corrections Secretary Jon. E. Litscher ("Litscher") were aware of the policy, as well.

Page 5 of 17
Case 2:21-cv-00303-JPS   Filed 05/16/22   Page 5 of 17   Document 10

### 1.3 Analysis

The Court first examines whether Plaintiff has standing to pursue his constitutional claims. Under Article III, a federal court can only preside over actual cases or controversies. *J.B. v. Woodard*, 997 F.3d 714, 719 (7th Cir. 2021). "The doctrine of standing exists to enforce this limitation and requires 'that any person invoking the power of a federal court must demonstrate standing to do so.'" *Id.* (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)). "To establish standing, a plaintiff must show that he has suffered an injury in fact[,] fairly traceable to the defendant[,] that is capable of being redressed through a favorable judicial ruling." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–61 (1992)).

Based on the allegations in the complaint, Plaintiff does not have standing to pursue his claims regarding the unconstitutional law library policy. While he has sufficiently alleged an injury (his inability to use the law library for a week) that is traceable to the defendants (RCI staff prevented him from using the library, relying on an ostensible policy), the injury cannot be remedied by a favorable judicial ruling for two reasons. First, RCI remedied the violation on its own accord by May 30, 2018, a week after Plaintiff's transfer to the Green Unit. Second, Plaintiff is no longer an inmate at RCI, so the possibility that he could be injured again by this policy—and thus the possibility that a favorable ruling would help him in the future—is extremely remote. While it is commendable that Plaintiff seeks to assist his fellow inmates, he has not adequately alleged that he has standing to do so.

Plaintiff also has not stated a claim under the Americans with Disabilities Act ("ADA"), or the Rehabilitation Act ("RA"). To state a claim for violations of the ADA, Plaintiff must allege that he is "a qualified

individual with a disability, that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such entity, and that the denial or discrimination was by reason of his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (citations and quotations omitted). The RA is "functionally identical." *Id.* It requires Plaintiff to allege that "(1) he is a qualified person (2) with a disability and (3) the [state agency] denied him access to a program or activity because of his disability." *Jaros v. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012).

Plaintiff has adequately alleged that he is a qualified person with a disability. He also alleges that RCI denied his access to the law library because he was housed in Green Unit. ECF No. 1 ¶ 13. He explains that Green Unit consists of Green Unit West, which houses inmates with disciplinary problems and "some disabled inmates," and Green Unit East, which houses new inmates for approximately thirty days. *Id.* ¶ 17.

While Plaintiff's disability was the but-for cause of his placement in the Green Unit (which houses several different types of inmates, only some of which are disabled), it appears that this placement was, itself, an accommodation. Within days after Plaintiff arrived in Green Unit, he learned that he needed a second accommodation (i.e., access to the library as a Green Unit resident), which RCI promptly provided. Indeed, a week after he moved to the Green Unit, he was able to use the law library. Because of these successive accommodations and the prompt fashion in which RCI rectified Plaintiff's issue, the Court cannot conclude with any confidence that RCI denied Plaintiff access to the law library because of his disability as required by the ADA and the RA. This complaint will be dismissed with

leave to amend to allow for the possibility that there may be additional facts that would warrant a different conclusion.

### 2. MOTION TO APPOINT COUNSEL

Because the Court will grant Plaintiff leave to amend his complaint, the Court will also address Plaintiff's motion to appoint counsel. As a civil litigant, Plaintiff has "neither a constitutional nor statutory right to a court-appointed attorney." *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018). However, under 28 U.S.C. § 1915(e)(1), a "court may request an attorney to represent any person unable to afford counsel." A court should seek counsel to represent a plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Whether to appoint counsel in a particular case is left to a court's discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018).

While framed in terms of a plaintiff's capacity to litigate, this discretion must also be informed by the realities of recruiting counsel in this District. When a court recruits a lawyer to represent a pro se party, the lawyer takes the case pro bono. Unlike a lawyer appointed to represent a criminal defendant during his prosecution, who is paid by the government for his work, an attorney who takes a prisoner's civil case pro bono has no promise of compensation.

It is difficult to convince local lawyers to take such cases. Unlike other districts in this Circuit, *see, e.g.*, L.R. 83.35 (N.D. Ill.), the Eastern District of Wisconsin does not employ an involuntary appointment system for lawyers admitted to practice in the District. Instead, the District relies

on the willingness of lawyers to sign up for the Pro Bono Attorney Panel and, once there, accept appointments as needed. *See* Pro Bono Program, *available at*: http://www.wied.uscourts.gov/pro-bono-program.

The District is grateful to the lawyers who participate in the Pro Bono Program, but there are never enough volunteers, and those who do volunteer rarely take more than one or two cases a year. This is understandable, as many are already busy attending to fee-paying clients. Although the Pro Bono Program does provide for payment of certain litigation expenses, it does not directly compensate a lawyer for his or her time. Participants may seek attorney's fees when permitted by statute, such as in successful § 1983 cases, but they will otherwise go unpaid. The small pool of attorneys available to this District for pro bono appointments stands in stark contrast to that of the Court of Appeals, which regularly recruits counsel from across the nation to represent pro se plaintiffs on appeal. *See, e.g.*, *James*, 889 F.3d at 323 (appointing counsel from Washington, D.C. to represent the pro se appellant); *McCaa*, 893 F.3d at 1029 (same).

Finally, it must be remembered that, when a court determines that counsel recruitment is appropriate, it can take months to locate a willing lawyer. This delay works to the detriment of all parties and contravenes Congress's instruction in Federal Rule of Civil Procedure 1 that district courts must endeavor to secure the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Thus, looming large over each request for counsel are a court's ever-more-limited time and resources.

With these considerations in mind, the Court returns to the question presented: whether counsel can and should be recruited to represent Plaintiff at this stage in this case. First, a court asks whether the litigant has made "reasonable" efforts to obtain his own representation. *Pruitt*, 503 F.3d

at 655; *Jackson v. County of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992). It is a question not often litigated; many district court judges either overlook arguably unreasonable efforts at obtaining counsel, or they impose eminently practical requirements such as the submission of evidence demonstrating that the prisoner has tried and failed to secure representation from several lawyers. *See, e.g.*, *Kyle v. Feather*, No. 09-cv-90-bbc, 2009 WL 2474627, at *1 (W.D. Wis. Aug. 11, 2009).

The first element of *Pruitt* is fairly easy to satisfy, but it is not toothless, and it is not a mere technical condition of submitting a certain number of rejection letters. If it was, then a Wisconsin prisoner litigating a § 1983 action could submit rejection letters from ten randomly selected criminal defense lawyers from Nevada and call his work complete. This cannot be. The purpose of the reasonable-efforts requirement is to ensure that if a court and private lawyers must expend scarce resources to provide counsel for a prisoner, he has at least made a good-faith effort to avoid those costs by getting a lawyer himself. To fulfill this duty, a pro se prisoner should reach out to lawyers whose areas of practice suggest that they might consider taking his case. If he learns that some of the lawyers he has contacted do not, he should reach out to others before he concludes that no one will help him.

In this case, Plaintiff has attached emails from several attorneys in the Wisconsin area with civil rights practice, which demonstrate a good faith effort to secure appropriate counsel in this matter. *See* ECF No. 9-1 at 1–6. The Court is satisfied that he has accomplished the first step of the *Pruitt* analysis.

But Plaintiff's request must also succeed on the second *Pruitt* question: whether the difficulty of the case exceeds his capacity to

coherently present it. This assessment must be made in light of the particular capabilities and circumstances presented by each pro se litigant. *James*, 889 F.3d at 326–27. The Court of Appeals explains:

> The second step is itself grounded in a two-fold inquiry into both the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself. The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand. Ultimately, the question is not whether a lawyer would present the case more effectively than the pro se plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant. Rather, the question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself. Notably, this inquiry extends beyond the trial stage of the proceedings. The relevant concern is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty. This includes all of the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.

*Id.* (citations and quotations omitted). While a court need not address every concern raised in a motion for appointment of counsel, it must address "those that bear directly" on the individual's capacity to litigate his case. *McCaa*, 893 F.3d at 1032.

The balancing contemplated in the second *Pruitt* step must be done against the backdrop that district courts cannot be expected to appoint counsel in circumstances which are common to all or many prisoners. *See Bracey v. Grondin*, 712 F.3d 1012, 1017–18 (7th Cir. 2013); *Pruitt*, 503 F.3d at 656 (observing that the Seventh Circuit has "resisted laying down categorical rules regarding recruitment of counsel in particular types of cases"); *Harper v. Bolton*, 57 F. Supp. 3d 889, 893 (N.D. Ill. 2014). Doing so

would place untenable burdens on court resources. It would also turn the discretion of § 1915(e)(2) on its head, making appointment of counsel the rule rather than the exception.

Several pronouncements from the Court of Appeals appear to be in tension with this principle. First, the Seventh Circuit notes that "complexity increases and competence decreases as a case proceeds to the advanced phases of litigation." *James*, 889 F.3d at 327. It deems the "[a]dvanced phases" to include those from discovery onward. *Id.*; *McCaa*, 893 F.3d at 1032. But nearly every prisoner case proceeds to discovery, as the district court applies exceedingly lenient review during initial screening.

Second, the Seventh Circuit instructs that district courts should evaluate a prisoner's competency irrespective of the involvement of a "jailhouse lawyer." *McCaa*, 893 F.3d at 1033; *Walker v. Price*, No. 17-1345, 2018 WL 3967298, at *5 (7th Cir. Aug. 20, 2018). How courts should do this is not clear. A court rarely knows whether a filing was prepared by the plaintiff or someone helping him. And if a court does know that the plaintiff is receiving help, how can it assess his ability to litigate without knowing which portions of the filings are his work, and which come from the jailhouse lawyer? In *Walker*, the court determined that the inmate's work product decreased in quality after his jailhouse lawyer was transferred to another prison. 2018 WL 3967298, at *6. Yet a savvy prisoner, looking to secure counsel for himself, could do this on purpose, crafting his filings to downplay his own litigation capabilities. A court would have no way to assess whether the inmate is sandbagging it.

Finally, the Court of Appeals indicates that claims involving the state of mind of the defendant, such as those involving deliberate indifference, are particularly complex. *James*, 889 F.3d at 327–28; *McCaa*, 893 F.3d at 1032.

Page 12 of 17
Case 2:21-cv-00303-JPS   Filed 05/16/22   Page 12 of 17   Document 10

Yet a government official's culpable mental state is the foundation for most constitutional claims. Indeed, it is often the defining characteristic that sets § 1983 claims apart from their state-law tort analogues. Deliberate indifference is essential to nearly all claims of cruel and unusual punishment, excessive force, mistreatment of medical needs, and First Amendment and due process violations. *See Kingsley v. Henderson*, 135 S. Ct. 2466, 2473 (2015); *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Hambright v. Kemper*, 705 F. App'x 461, 462 (7th Cir. 2017); *Milton v. Slota*, 697 F. App'x 462, 464 (7th Cir. 2017) ("*[N]egligently* inflicted harm does not amount to a constitutional violation.") (emphasis in original). Taken together, these claims comprise the vast majority of prisoner litigation in this District. If state-of-mind issues are generally beyond the ability of most pro se litigants to prove, then a court likely would need to appoint counsel in nearly every prisoner case. This is plainly impossible.

The guiding rule has always been that appointment of counsel is the exception rather than the rule in pro se prisoner litigation. Yet a confluence of all-too-common circumstances—discovery, jailhouse lawyers, and claims concerning state of mind—militate in favor of the appointment of counsel. As the list of reasons to appoint counsel grows, the reasons not to do so shrink. This District's resources have not kept pace.

Against this backdrop, the Court finds that Plaintiff has not presented sufficient evidence and argument showing that he cannot litigate or try this matter competently on his own. Plaintiff explains that he is 73 years old, and the Veteran's Administration recently diagnosed him with a "mild cognitive impairment." ECF No. 9-1 at 7. This fact certainly weighs in favor of appointing counsel. But there are also facts weighing against it.

Page 13 of 17
Case 2:21-cv-00303-JPS    Filed 05/16/22    Page 13 of 17    Document 10

First, Plaintiff is a prodigious (and occasionally successful) litigant, who has a better-than-average grasp on both procedural rules and substantive law when compared to most pro se litigants, notwithstanding his mild cognitive impairment. Second, Plaintiff is no longer in custody, so his ability to access public law libraries and legal clinics, and to spend his time and resources litigating his cases, is unrestrained by prison policies. Finally, this matter is currently at the pleadings stage, which is less complex than discovery, motion practice, and trial.

At this juncture, in this matter, the Court finds that appointment of counsel is not appropriate. This may change depending on the strength of the amended complaint, the case's progression, and any changes in Plaintiff's cognitive abilities. The Court additionally notes that Plaintiff has secured counsel in one of his appeals, which is currently pending before the Seventh Circuit. *See Shaw v. Kemper*, Case No. 21-3265 (7th Cir. 2021). It may be worthwhile for Plaintiff to explore whether this attorney could offer assistance or otherwise refer counsel.

4. **CONCLUSION**

For the reasons explained above, the Court will deny Plaintiff's request for counsel and give him leave to amend. The Court also notes that Plaintiff's motion to appoint counsel includes a request for a protective order, though the substance of the motion is focused on the motion to appoint counsel. To the extent that Plaintiff's motion for a protective order seeks to protect the medical documents appended to his motion to appoint counsel, the Court will grant the request and order the Clerk of Court to restrict access to the documents found at ECF No. 9-1.

The Court leaves with some parting words of advice for Plaintiff as he embarks upon his amendment. When writing his amended complaint,

Plaintiff must allege how a favorable ruling on the constitutional issues would help him, particularly because his current complaint acknowledges that RCI already remedied his specific injury. With reference to the ADA and RA claims, Plaintiff must allege plausible facts that permit the Court to infer that Plaintiff was discriminated against *because of* his disability, and not because of his placement in Green Unit, where it appears that other, non-disabled inmates lived, as well. Plaintiff's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the Court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

The Court is enclosing a copy of its amended complaint form. Plaintiff must list all of the defendants in the caption of his amended complaint. He should use the spaces on pages two and three to allege the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If the space is not enough, Plaintiff may use up to five additional sheets of paper. The amended complaint takes the place of the prior complaint and must be complete, without reference to his prior complaint.

Plaintiff is advised that the amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint." The amended complaint supersedes the prior complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056 (7th Cir. 1998). In *Duda*, the appellate court emphasized that in such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* at 1057 (citation omitted). If an amended

Page 15 of 17
Case 2:21-cv-00303-JPS   Filed 05/16/22   Page 15 of 17   Document 10

complaint is received, it will become the operative complaint in this action, and the Court will screen it in accordance with 28 U.S.C. § 1915A.

Accordingly,

**IT IS ORDERED** that Plaintiff's complaint, ECF No. 1, fails to state a claim;

**IT IS FURTHER ORDERED** that Plaintiff may file an amended complaint that complies with the instructions in this Order on or before **June 6, 2022**. If Plaintiff files an amended complaint by the deadline, the Court will screen the amended complaint under 28 U.S.C. § 1915A. If Plaintiff does not file an amended complaint by the deadline, the Court will dismiss this case based on his failure to state a claim in his original complaint and will issue him a "strike" under 28 U.S.C. § 1915(g);

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel, ECF No. 8, be and the same is hereby **DENIED**; however, to the extent Plaintiff seeks to restrict access to his medical records, that request is **GRANTED**; the Clerk of Court is ordered to restrict access to ECF No. 9-1 to protect Plaintiff's medical records; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a blank prisoner amended complaint form and a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 16th day of May, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.